UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
-------------------------------------------------------------------- X

**BENNY TYBERG**, individually and as personal
representative of the **ESTATE OF AVRAHAM
TYBERG,**
Yossef Nakar 21, Petach Tikvah, Israel;


**AYALA BAR ETHAN**, individually and as personal
representative of the **ESTATE OF NEHEMIA LAVI,**          Civ. No. 25-CV-3528
Arbel 53, Esh'har, 2019600 Israel;


**NECHAMA SHOR**, individually and as the mother and
natural guardian of minor plaintiffs, **C.S.S.** and **S.S.S.,**
Mish'ol Stroma 1, Sderot, Israel;


**DANIEL SHOR**,
Smeter El Haleda 8, Sderot, Israel;


**NAAMA DOPELT,**
Abu Rabia 26, Jerusalem, Israel;


**ELCHANAN YOSEF KAMSLER,**
Haarbel 32, Hashmonaim;


**TIRTZA KAMSLER,**
Haarbel 32, Hashmonaim;


**OSNAT KAMSLER,** individually and as the mother and
natural guardian of minor plaintiffs, **Z.B.K. and L.S.K.**
Haarbel 32, Hashmonaim;


**ARIEL KAMSLER,**
Haarbel 32, Hashmonaim;


**SHOVAL KAMSLER,**
Haarbel 32, Hashmonaim;


**GILAD DAVID KAMSLER,**
Haarbel 32, Hashmonaim;


**ITAY HAREL KAMSLER,**
Haarbel 32, Hashmonaim;

**STACY RUBTCHINSKY KAMER**, individually and as the mother and natural guardian of minor plaintiffs **N.E.K.** and **Y.S.K.,**
Einstein 4, Ra'anana, 4327204, Israel;

**ALLEN SAMUEL KAMER,** individually and as the father and natural guardian of minor plaintiffs **N.E.K.** and **Y.S.K.,**
Einstein 4, Ra'anana, 4327204, Israel;

**ELIANA LIAT KAMER,**
Einstein 4, Ra'anana, 4327204, Israel;

**MAYA ADIRA KAMER,**
Einstein 4, Ra'anana 4327204, Israel;

**ROCHEL SIMCHA,** individually and as personal representative of the **ESTATE OF AHARON SIMCHA,** and as the mother and natural guardian of minor plaintiffs, **M.S., H.S., B.S., M.S., B.S.,** and **C.S.,**
Shamgar Street 10/18, Jerusalem 9446110, Israel;

**DAVID SIMCHA**, individually and as personal representative of the **ESTATE OF AHARON SIMCHA,** and as the father and natural guardian of minor plaintiffs **M.S., H.S., B.S., M.S., B.S.,** and **C.S.,**
Shamgar Street 10/18, Jerusalem 9446110, Israel;

**YECHESKEL SIMCHA,**
Shamgar Street 10/18, Jerusalem 9446110, Israel;

**SHIFRA SIMCHA (MAYTELES),**
Shamgar Street 10/18, Jerusalem 9446110, Israel;

**ESTER SIMCHA,**
Shamgar Street 10/18, Jerusalem 9446110, Israel;

**MINDY SIMCHA,**
Shamgar Street 10/18, Jerusalem 9446110, Israel;

**JACK A. SIMCHA,**
Shamgar Street 10/18, Jerusalem 9446110, Israel;

**FAYE SIMCHA,**
Shamgar Street 10/18, Jerusalem 9446110, Israel;

**YEHUDA BARUCH ROZMARIN,**
Shamgar Street 10/18, Jerusalem 9446110, Israel;

**HANA AIRUS ROZMARIN,**
Shamgar Street 10/18, Jerusalem 9446110, Israel;

**DENISE GILBERT,**
Grizzim Street 37, Kedumim, Israel;

**SABRINA SPECTOR,**
16 Lantem Lane, Cherry Hill, New Jersey 08002;

**ERICK GILBERT,**
14654 Bauer Drive, Rockville, Maryland 20853;

                              Plaintiffs,

                    -against-;

**THE ISLAMIC REPUBLIC OF IRAN**
Foreign Minister Hossein Amir-Abdollahian
Ministry of Foreign Affairs
Khomeini Ave., United Nations St.
Teheran, Iran,
                              Defendant.
--------------------------------------------------------------------------X

## **COMPLAINT**

Plaintiffs, by their undersigned counsel, complain of Defendant, and allege for their

Complaint upon information and belief as follows:

## **INTRODUCTION**

1.      This is a civil action pursuant to the state-sponsored terrorism exception of the

Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, *et seq*., for wrongful death,

personal injury, related torts, and solatium damages arising from terror attacks in Israel carried

about by agents of Hamas and the Palestine Islamic Jihad ("PIJ") between 2015 and 2025, in which

decedents Avraham Gilad Tyberg, Nehemia Lavi, and Aharon Simcha were killed, Plaintiffs

N.E.K., Elchanan Yosef Kamsler, and Denise Gilbert were severely physically injured, and the remaining plaintiffs were severely psychologically and emotionally injured.

2.      These terrorist attacks were carried out by Hamas and PIJ using material support and resources provided by Defendant the Islamic Republic of Iran.

## JURISDICTION AND VENUE

3.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1330-1332, 1367 and 1605A(a).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4) and the rules of pendent venue.

## THE PARTIES

5.      Plaintiff Benny Tyberg, the father of decedent Avraham Gilad Tyberg, at all times relevant hereto, is an American citizen domiciled in Israel.

6.      Plaintiff Ayala Bar Ethan, the sister of decedent Nehemia Lavi, at all times relevant hereto, is an American citizen domiciled in Israel.

7.      Plaintiff Nechama Shor, who witnessed the murder of 5-year-old Ido Avigal during a rocket attack form the Gaza Strip on the city of Sderot in May 2021 and hid from Hamas terrorists operating beneath her building and in the street adjacent to it on October 7, 2023, at all times relevant hereto, is an American citizen domiciled in Israel.

8.      Plaintiff Daniel Shor, who witnessed the murder of 5-year-old Ido Avigal during a rocket attack form the Gaza Strip on the city of Sderot, at all times relevant hereto, is an Israeli citizen domiciled in Israel.

9.      Plaintiffs C.S.S. and S.S.S., the children of Daniel and Nechama Shor, who witnessed the killing of Ido Avigal in the rocket attack on Sderot and who hid from Hamas terrorists operating beneath their building and in the street adjacent to it on October 7, 2023, at all times relevant hereto, are American citizens domiciled in Israel.

10.     Plaintiff Naama Dopelt, the fiancé of Captain Kfir Itzhak Franco, who was murdered in northern Gaza while fighting the Hamas terrorist organization, at all times relevant hereto, is an American citizen domiciled in Israel.

11.     Plaintiff Elchanan Yosef Kamsler, who was severely injured in action by Hamas terrorists, at all times relevant hereto, is an American citizen domiciled in Isarel.

12.     Plaintiff Tirtza Kamsler, the wife of Plaintiff Elchanan Yosef Kamsler, at all times relevant hereto, is an Israeli citizen domiciled in Israel.

13.     Plaintiff Osnat Kamsler, the mother of Plaintiffs Elchanan Yosef Kamsler, Shoval Kamsler, Gilad David Kamsler, Itay Harel Kamsler, Z.B.K., and L.S.K., at all times relevant hereto, is a dual UK Israeli citizen domiciled in Israel.

14.     Plaintiff Ariel Kamsler, the father of Plaintiffs Elchanan Yosef Kamsler, Shoval Kamsler, Gilad David Kamsler, Itay Harel Kamsler, Z.B.K., and L.S.K., at all times relevant hereto, is an American citizen domiciled in Israel.

15.     Plaintiffs Shoval Kamsler, Gilad David Kamsler, Itay Harel Kamsler, Z.B.K., and L.S.K., the siblings of Plaintiff Elchanan Yosef Kamsler, at all times relevant hereto, are American citizens domiciled in Israel.

16.     Plaintiff N.E.K., who was severely injured in a Hamas terrorist attack, at all times relevant hereto, is an American citizen domiciled in Israel.

17.    Plaintiff Stacy Rubtchinsky Kamer, the mother of Plaintiffs N.E.K., Eliana Liat Kamer, Maya Adira Kamer, and Y.S.K., at all times relevant hereto, is an American citizen domiciled in Israel.

18.    Plaintiff Allen Samuel Kamer, the father of Plaintiffs N.E.K., Eliana Liat Kamer, Maya Adira Kamer, and Y.S.K., at all times relevant hereto, is an American citizen domiciled in Israel.

19.    Plaintiffs Eliana Liat Kamer, Maya Adira Kamer, and Y.S.K., the siblings of Plaintiff N.E.K., at all times relevant hereto, are American citizens domiciled in Israel.

20.    Plaintiff Rochel Simcha, the mother of Decedent Aharon Simcha, and Plaintiffs Yecheskel Simcha, Shifra Simcha Mayteles, Ester Simcha, Mindy Simcha, M.S., H.S., B.S., M.S., B.S., and C.S., at all times relevant hereto, is an American citizen domiciled in Israel.

21.    Plaintiff David Simcha, the father of Decedent Aharon Simcha, and Plaintiffs Yecheskel Simcha, Shifra Simcha Mayteles, Ester Simcha, Mindy Simcha, M.S., H.S., B.S., M.S., B.S., and C.S., at all times relevant hereto, is an American citizen domiciled in Israel.

22.    Plaintiffs Yecheskel Simcha, Shifra Simcha Mayteles, Ester Simcha, Mindy Simcha, M.S., H.S., B.S., M.S., B.S., and C.S., the siblings of Decedent Aharon Simcha and Plaintiffs Yecheskel Simcha, Shifra Simcha Mayteles, Ester Simcha, Mindy Simcha, M.S., H.S., B.S., M.S., B.S., and C.S., at all times relevant hereto, are American citizens domiciled in Israel.

23.    Plaintiffs Jack A. Simcha, Faye Simcha, Yehuda Baruch Rozmarin, and Hana Airus Rozmarin, the grandparents of Decedent Aharon Simcha, at all times relevant hereto, are American citizens domiciled in Israel.

24.    Plaintiff Denise Gilbert, who was severely injured in a Hamas terrorist attack, at all times relevant hereto, is an American citizen domiciled in Israel.

25.    Plaintiffs Sabrina Spector and Erick Gilbert, the children of Denise Gilbert, at all times relevant hereto, are American citizens domiciled in the United States.

## UNDERLYING FACTS

### The Hamas Terrorist Organization

26.    The Islamic Resistance Movement (Harakat Al-Muqawama Al-Islamia)**,** known by its Arabic acronym "Hamas," is a radical terrorist organization that was established by Islamic militants in 1987. It is the Palestinian branch of the extremist Muslim Brotherhood organization.

27.    Hamas views Israel and the United States as the greatest enemies of Islam. The terrorist group opposes a peaceful resolution of the Middle East conflict. The Hamas charter, first published in 1988, states that "There is no solution to the Palestinian problem except by Jihad," or violent struggle and a Holy War against Israel and the West.

28.    Hamas' openly declared goal is the creation of an Islamic state in the territory of Israel, the West Bank, and the Gaza Strip, the destruction of the State of Israel, and the murder or expulsion of its Jewish residents. Hamas seeks to achieve this goal by carrying out terrorist attacks against Jewish civilians in Israel, the West Bank, and the Gaza Strip. Hamas proudly and openly acknowledges that it uses terrorism to achieve its political goals. Hamas employs extremist violence against civilian targets in an effort to coerce, intimidate, and influence government decision-makers and the public in Israel to accept Hamas' demands.

29.    Between its founding and the present day, Hamas has carried out thousands of terrorist attacks in Israel, the West Bank, and the Gaza Strip, in which scores of Israeli and United States citizens, as well as the nationals of many other countries, were murdered and thousands more wounded.

30.     Between its founding and the present day, Hamas' policy and practice of carrying out terrorist attacks was and is notorious and well known to the public at large, including the defendant.

31.     Since June 2007, two years after Israel's summer 2005 disengagement from Gaza, Hamas has controlled the Gaza Strip. Under Hamas control, thousands of terrorist rockets and mortar shells have been fired from the Gaza Strip at Israeli towns and villages, terrorizing and destabilizing the lives of hundreds of thousands of Israeli citizens. On numerous occasions, Hamas and other Islamic terrorist groups in Gaza have tried to infiltrate the Israeli-Gaza border to perpetrate murderous attacks and kidnappings of Israeli citizens, soldiers, and citizens of other nationalities.

32.     Between 1999 and the present day, the courts of the United States, including this Court, published a number of decisions finding that Hamas was responsible for terrorist attacks in which American and Israeli citizens were killed or injured.

33.     Hamas has been designated by the United States Government as a Specially Designated Terrorist ("SDT") continuously since 1995, as a Foreign Terrorist Organization ("FTO") continuously since 1997, and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

**The Palestine Islamic Jihad Terrorist Organization**

34.     The PIJ is a radical terrorist organization. The PIJ's openly declared goal is the creation of an Islamic state in the territory of Israel, the West Bank, and the Gaza Strip, and the destruction of the State of Israel and the murder or expulsion of its Jewish residents. The PIJ seeks to achieve this goal by carrying out terrorist attacks against Israeli targets. The PIJ proudly and openly acknowledges that it uses terrorism to achieve its political goals. The PIJ uses extremist

violence in an effort to coerce, intimidate, and influence government decision-makers and the public in Israel to accept the PIJ's demands.

35.     Between its founding and the present day, PIJ has carried out thousands of terrorist attacks against Israeli targets, in which scores of Israeli and United States citizens, as well as other nationalities, were murdered and hundreds more were wounded. On numerous occasions, PIJ and other Islamic terrorist groups in Gaza have tried to infiltrate the Israeli-Gaza border to perpetrate murderous attacks and kidnappings of Israeli citizens and soldiers.

36.     Between its founding the present day, PIJ's policy and practice of carrying out terrorist attacks were and are notorious and well known to the public at large, including the defendant.

37.     Between 1999 and the present day, the courts of the United States, including this Court, published a number of decisions finding that PIJ was responsible for terrorist attacks in which American and Israeli citizens were killed or injured.

38.     The PIJ has been designated by the United States Government as a Foreign Terrorist Organization ("FTO") continuously since 1997 and as a Specially Designated Global Terrorist ("SDGT") continuously since 2001.

**Iran's Provision of Material Support and Resources to Hamas and PIJ**

39.     Since 1984 until the present day, Defendant Iran has been continuously designated by the United States Department of State as a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979 (50 U.S.C. § 2405(j)).

40.     During the period relevant hereto, including the several-year period preceding all the terrorist attacks at issue herein, Defendant Iran provided Hamas and PIJ with massive financial support with the specific intention of causing and facilitating the commission of acts of

extrajudicial killing and international terrorism, including the terrorist attacks at issue herein. Such financial support was provided continuously, routinely, and in furtherance of, and as implementation of a specific policy and practice established and maintained by Iran, in order to help Hamas and PIJ achieve goals shared by Iran. These goals included terrorizing the Jewish civilian population in Israel and weakening Israel's economy, social fabric, and military strength and preparedness through extremist violence targeting civilians.

41.    Iran provided this financial support to Hamas and PIJ pursuant to agreements reached in the 1980s between Iran and Hamas and Iran and PIJ, respectively, which remain in force until today. Under those agreements, Hamas and PIJ undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank, and Gaza, and in return, Iran undertook to provide Hamas and PIJ with financial support to carry out such extrajudicial killings and terrorist attacks. The purpose of these agreements was to achieve the goals detailed in the preceding paragraph.

42.    By 1994, Iran reportedly provided at least tens of millions of dollars to Hamas in the form of military training and logistical support. Reportedly, by 1999, Iran was training Hamas terrorists within its borders, and the Iranian Intelligence Service made a $35 million transfer to Hamas to finance terrorist operations.

43.    In 2004, Iran's funding to Hamas dramatically increased. At the time, the then-leader of Hamas, Khaled Mashal, reportedly sought increased funds from Iran to reinvigorate Hamas operational cells, which Iran willingly provided.

44.    After Hamas' violent takeover of Gaza in 2007, Iran's support for Hamas terrorism escalated. According to a 2010 U.S. Department of Defense report, Iran provided Hezbollah and

several Palestinian terrorist groups—including Hamas—with funding, weapons, and training to attack Israel and disrupt the Middle East peace process.

45.     The United States Department of State has reported that since seizing power in 2007, Hamas has utilized "the majority of its activity in Gaza" to bolster its defenses, build up weapons supplies, and launch military attacks on Israel. It also constructed a massive underground tunnel network, reportedly of more than 450 miles in size. From these sophisticated and fortified tunnels, Hamas is able to move about the Gaza Strip freely, fire rockets at Israeli cities indiscriminately, smuggle and store its armaments, shelter and hide from Israeli military reprisals, evade capture, and imprison Israeli hostages.

46.     After the conflict between Hamas and Israel erupted in 2014 over the terrorist rocket fire into Israeli cities from Gaza, Iran again increased its funding to Hamas and also began providing Hamas with additional and more advanced missile technology. By 2017, Iran was Hamas' largest financial and military backer.

47.     In November 2018, the United States Treasury Department reportedly uncovered an "oil for-terror" scheme that benefited Hamas, among others. The scheme involved the shipment of Iranian oil to Syria; Syria would sell the oil and pay hundreds of millions of U.S. dollars in profits to Iran. From there, Iran would distribute the funds to Hamas, the PIJ, and other regional terrorist organizations.

48.     In 2023, Iran's funding for Hamas reportedly increased from $100 million to $350 million annually.

49.     Iran's support for Hamas extends far beyond financial assistance. Prior to the ousting of Sudanese dictator Omar al-Bashir in 2019, Hamas was almost entirely reliant on Iran supplied rockets that were smuggled into Gaza via Sudan and then Egypt.

50.    As has been extensively reported, Iran in recent years has helped Hamas develop more advanced rockets to strike Israel, as well as assisting with the building of rocket-production facilities in the Gaza Strip. Hamas commanders routinely traveled to Iran to receive training in the production and operation of weapons and to tour the Islamic Revolutionary Guard Corps' ("IRGC") own rocket-production facilities. Reportedly, according to intelligence officials, Iran's technological assistance has resulted in a significant improvement in the terrorist organization's ability to strike targets deep inside Israel and has contributed to the deaths of numerous Israelis. Indeed, while Hamas rockets were manufactured in Gaza, they have been based on Iranian design and instruction. The close collaboration between Iran and Hamas has resulted in significant improvements in terms of range, precision, lethality, and the extent of destruction that Hamas' weapons can cause.

51.    In January 2021, IRGC Aerospace Force commander Amir Ali Hajizadeh boasted, "All the missiles you might see in Gaza and Lebanon were created with Iran's support." This included, in addition to locally produced weapons, transfer of missiles by underground tunnel and by sea.

52.    In May 2021, it was also reported that Iran's military, the terrorist Hezbollah organization, and Hamas were coordinating their efforts to fight and terrorize Israel at a joint "war room" in Beirut, Lebanon.

53.    Recently, Iran's Supreme Leader, Ayatollah Ali Khamenei, publicly hosted Hamas leader, Ismail Haniyeh and other senior officials of the group in Tehran.

**Iran Also Knowingly Provided Material Support and Resources to Hamas and PIJ in Perpetrating the October 7 terrorist attacks**

54. As reported by the Wall Street Journal, since August 2023, the IRGC worked with Hamas to plan the terror attacks of October 7, 2023 ("October 7 Terrorist Attacks") at a series of meetings held in Beirut, Lebanon.

55. Iran and its military hierarchy felt tremendously threatened by Israel's expanding ties with certain Gulf Arab states and Western allies such as Saudi Arabia, Egypt, and Jordan, which, according to Iran, if left unchecked, could economically choke the Islamic Republic. They greatly feared Israel signing a peace agreement with Saudi Arabia and further stabilizing the Middle East region under the United States' auspices and influence. In order to disrupt expanding peace talks with Israel, Iran intended to create a multi-front war to overwhelm the Jewish State, with Hamas attacking in the south and Hezbollah attacking from the north.

56. Beginning in April 2023, Ismail Qaani—a senior leader in Iran's IRGC—held meetings in Lebanon to begin his coordination efforts to promote Hamas and Hezbollah working jointly on their initiatives against Israel and countering Western-sponsored regional stability. Around the same time, to test the newfound coordination among its proxies, Iran directed several attacks from Lebanon and Gaza on Israel.

57. More recently, since August 2023, representatives from Hamas and Hezbollah reportedly met with Iran's IRGC leaders on a biweekly basis to discuss the planned October 7 Terrorist Attacks, which included the determination of when the attacks would take place. Among those reportedly in attendance at the strategy and planning meetings were Iran's Ismail Qaani, Hezbollah's leader Hassan Nasrallah, Hamas' then military chief, the late Saleh al-Arouri, and the Iranian Foreign Minister Hossein Amir-Abdollahian.

58.     As many experts have indicated, Hamas cannot and does not make war without prior explicit agreement from Iran. Indeed, some experts (such as former National Security Adviser John Bolton) have stated that the October 7 Terrorist Attacks marked the beginning of an Iranian war against Israel, carried out by Tehran's terrorist proxies, including Hamas.

59.     As the Wall Street Journal reported on October 25, 2023, "[i]n the weeks leading up to Hamas' [October 7] attacks on Israel, hundreds of the Palestinian Islamist militant group's fighters received specialized combat training in Iran." As the Wall Street Journal reported, approximately 500 Hamas militants reportedly attended military exercises and trainings in Iran in September 2023, which may have supported Hamas' use of drones, paragliders, and motorcycles during the October 7 Terrorist Attacks.

60.     Similarly, a group of Hamas fighters were reportedly sent to Iran to complete a training with the "Godfather" of the Iranian ballistic missile program, Commander Hassan Tehrani Moghaddam. Captured Hamas terrorists reportedly revealed to Israeli intelligence officials that they had been training for the October 7 Terrorist Attacks for a year and were instructed by Iran's IRGC and Hezbollah. The training reportedly included instruction on paragliding and hostage taking.

61.     Likewise, Iran reportedly helped plan the attack, select the timing of it, trained militants, and had at least one year's advanced knowledge of it. Specifically, multiple reports have emerged that Iran even elected to postpone the attacks from the Passover holiday in the Spring of 2023 (when the attacks were initially scheduled to occur) to October 7, 2023.

62.     In late September 2023, the leader of Iran's IRGC's Quds Force, General Esmail Qaani, reportedly oversaw a joint military drill with the Syrian army, and, on October 2, 2023, Qaani arrived in Lebanon again to meet with Hezbollah and Hamas.

63.    Despite Iran's initial denials of its involvement with the October 7 Terrorist Attacks—which were muffled by Iran's direct calls of support for Hamas—Iran has now stopped disavowing its involvement and has begun threatening Western powers, including the United States, for their support of Israel.

64.    Indeed, Iran has now reportedly gone one step further, and, as of December 2023, the IRGC claimed ownership of the October 7 Terrorist Attacks, explaining that it was a response to the January 2020 assassination of Qasem Soleimani, the former commander of the IRGC's Quds Force, who was killed by the United States. In fact, as *The Times of Israel* website has reported in December 2023, IRGC spokesman Ramazan Sharif stated that Hamas' October 7 Terrorist Attacks on Israel was "one of the revenges for the slaying of Soleimani."

65.    Further, as many experts have reportedly stated, Hamas' more sophisticated military capabilities, including its use of drones, paragliders, and hostage taking tactics, are hallmarks of Iran's involvement.

66.    As *The Washington Post* reported, more than a dozen intelligence analysts and military experts expressed astonishment at the stealth and sophistication of the Hamas assault, which involved coordinated raids across the Israeli border by hundreds of gunmen traveling by land, sea, and air—including motorized paragliders. The ground offensive was accompanied by swarms of rockets and drones that began penetrating across the border early Saturday, hitting targets with a degree of precision not seen in previous Hamas attacks. The intelligence analysts and military experts noted that while Hamas has a capable militia and indigenous assembly lines for rockets and drones as a result of the decades of state sponsorship, the October 7 Terrorist Attacks would have been extremely challenging without considerable outside help.

67.     Further underscoring the depth of Iran's involvement, on November 14, 2023, in the third round of sanctions since the October 7 Terrorist Attacks, the United States Treasury Department determined that Iran transferred "tens of millions of dollars" to Hamas by utilizing a Lebanese money exchange company to transfer funds from Tehran to Gaza.

68.     The Treasury Department also determined in its November 14, 2023, sanctions that Iran "trained Palestinian Islamic Jihad fighters to build and develop missiles in Gaza" in connection with the October 7 Terrorist Attacks.

69.     Accordingly, Defendant Iran gave substantial aid, assistance, and encouragement to one another and to Hamas and PIJ, and provided massive financial support to Hamas and PIJ, and thereby aided and abetted Hamas and PIJ, all with the specific intention of causing and facilitating the commission of acts of extrajudicial killing and international terrorism at issue herein. Defendant Iran did so with actual knowledge that Hamas and PIJ had killed and injured numerous U.S. citizens in terrorist bombings, rocket attacks, stabbings, shootings, and vehicle ramming attacks in the past. Moreover, Defendant Iran was on notice that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their aiding, abetting, and provision of material support and resources to Hamas and PIJ.

70.     Defendant Iran knowingly and willingly conspired, agreed, and acted in concert with one another and with Hamas and PIJ, in pursuance of the common plan, design, agreement, and goals discussed above, to cause and facilitate the commission of acts of extrajudicial killing and international terrorism at issue herein. Defendant Iran did so with actual knowledge that Hamas and PIJ had killed and injured numerous U.S. citizens in terrorist attacks and that additional U.S. citizens and other innocent civilians would be killed and injured as a result of their conspiracy with Hamas and PIJ.

71.     This Court repeatedly has held Iran liable to victims of state-sponsored terrorism, particularly for terrorist acts carried out by Hamas and PIJ in Israel. *See, e.g., Wultz v. Islamic Republic of Iran,* 864 F. Supp.2d 24 (D.D.C. 2012); *Bennett v. Islamic Republic of Iran,* 507 F. Supp.2d 117 (D.D.C. 2007); *Bodoff v. Islamic Republic of Iran*, 424 F. Supp.2d 74 (D.D.C. 2006); *Force v. Islamic Republic of Iran*, 464 F. Supp. 3d 323 (D.D.C. 2020); *Ben-Yishai v. Syrian Arab Republic*, 642 F. Supp. 3d 110 (D.D.C. 2022); *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258 (D.D.C. 2003); *Stern v. Islamic Republic of Iran*, 271 F. Supp.2d 286 (D.D.C. 2003); *Weinstein v. Islamic Republic of Iran*, 184 F. Supp. 2d 13 (D.D.C. 2002); <u>*see also Leibovitch v. Syrian Arab Republic*</u>, 25 F. Supp. 3d 1071 (N.D. Ill. 2014).

**Details of the Terrorist Attacks**

***<u>Plaintiff Benny Tyberg—Supernova Rave Festival Massacre—October 7, 2023</u>***

72.     On October 7, 2023, Avraham Gilad Tyberg, 24, was attending the Supernova Rave festival at Kibbutz Re'im.

73.     At 6:30 in the morning, rockets were seen flying above the festival, and subsequently Hamas and PIJ terrorists began infiltrating and attacking the festival grounds. More than three thousand terrorists from the Gaza Strip perpetrated a cross-border infiltration into Israel through its southern security fence and massacred over 350 attendees.

74.     Decedent Avraham Gilad Tyberg was one of the first targets killed by Hamas terrorists upon their infiltration into the festival.

75.     Plaintiff Benny Tyberg, Avraham's father, suffered severe economic, emotional, and psychological injuries as a result of the attack in which his son was killed.

### *Plaintiff Ayala Bar Ethan—stabbing attack in Jerusalem—October 3, 2015*

76.    On Saturday, October 3, 2015, a Hamas terrorist, armed with a knife, attacked a family on their way to pray at the Western Wall in the Old City of Jerusalem. Rabbi Nehemia Lavi, a resident of the Old City and an IDF reserve officer, went down with his gun to try and save the wounded, but the terrorist stabbed him and seized his weapon. Lavi died in the hospital shortly afterwards.

77.    Plaintiff, Ayala Bar Ethan, the sister of Nehemia Levi, was devastated and traumatized by her brother's death. Plaintiff suffered severe economic, emotional, and psychological issues as a result of the attack.

### *Shor Plaintiffs—Gaza Rocket Attack on Sderot—May 12, 2021*

78.    Between Monday, May 10, 2021, and Saturday, May 22, 2021, Hamas and the PIJ  fired 4,400 rockets at Israel, with more than 600 aimed specifically at Sderot. On Wednesday, May 12, 2021, 5-year-old decedent, Ido Avigal, was sheltering in a safe room with his mother and sister when a piece of shrapnel from the missiles managed to puncture the steel shutter and glass window of their shelter, mortally wounding him and injuring his mother and sister.

79.    Across the street, Plaintiffs Nechama and Daniel Shor and their children C.S.S. and S.S.S., were terrified and sheltering in their own shelter, where they witnessed the missile strike that killed Idan Avigal and injured his mother and sister, and feared for their own lives.

80.    Plaintiffs Nechama Shor, Daniel Shor, C.S.S., and S.S.S. suffered severe psychological trauma and emotional injuries as a result of the continuous Hamas and PIJ rocket attacks.

### .*Shor Plaintiffs—Terrorist Invasion in Sderot—October 7, 2023*

81.    On October 7, 2023, Plaintiffs Nechama Shor and her children C.S.S., and S.S.S., found themselves in the midst of a terrorist invasion of their city, Sderot. Hamas attackers had entered the city, overwhelmed police and security officials, and were shooting down residents in the streets, in their homes, and in the shelters where they had fled to. The heavily armed terrorists spared no one, murdering, raping, and kidnapping anyone who fell into their path.

82.    Plaintiffs Nechama Shor, C.S.S., and S.S.S. had to hide from Hamas terrorists operating beneath their building and in the street immediately adjacent to it for many hours.

83.    The family witnessed terrible horrors and were also forced to evacuate their home, leave their schools, and leave everything behind for an extended period of time.

84.    Plaintiff Daniel Shor was severely affected by the psychological injuries to his family.

85.    Plaintiffs Nechama Shor, Daniel Shor, C.S.S., and S.S.S. suffered severe psychological trauma and emotional injuries as a result of the Hamas and PIJ October 7 massacre.

### ***Plaintiff Naama Dopelt—Hamas Attack on Tank Commander Captain Kfir Itzhak Franco— November 15, 2023***

86.    On November 15, 2023, Captain Kfir Itzhak Franco, a platoon commander in the 401st Brigade's 52nd Battalion, was murdered while fighting Hamas in northern Gaza.

87.    Plaintiff, Naama Dopelt, the fiancée of Captain Kfir Itzhak Franco, was devastated and traumatized by the tragic news of her fiancée's death. Plaintiff suffered severe economic, emotional, and psychological issues as a result of the attack.

### *Kamsler Plaintiffs—Injured in Action—December 14, 2023*

88.    Plaintiff Elchanan Yosef Kamsler was serving in the Israel Defense Forces when he was subjected to an extrajudicial attack in Gaza by Hamas terrorists, a specifically designated global terrorist organization, and badly injured.

89.    Elchanan sustained severe shrapnel wounds to his neck, lungs, and shoulder and was placed in an induced coma. He spent several months hospitalized at Sheba Medical Center, followed by treatment at Beit Loewenstein and outpatient rehabilitation. He continues to suffer long-term damage to his shoulder.

90.    Plaintiff Elchanan Kamsler suffered severe physical, psychological, and emotional injuries as a result of the attack.

91.    Plaintiffs Tirtza Kamsler, Osnat Kamsler, Ariel Kamsler, Shoval Kamsler, Gilad David Kamsler, Itay Harel Kamsler, Z.B.K., and L.S.K. suffered severe economic, psychological, and emotional injuries from the attack in which their son and brother was injured.

### *Kamer Plaintiffs—Car Ramming Attack—January 15, 2024*

92.    Plaintiff N.E.K., 15, was waiting for the bus home in his hometown of Raanana on January 15, 2024, when two Hamas terrorists violently struck him with a car they had stolen after stabbing another victim to death.

93.    N.E.K. sustained critical injuries to his head and spinal cord and initially could not speak, walk, or breathe on his own. Medical experts were unsure he would ever walk again. After multiple surgeries, N.E.K. was in rehabilitation for five months, moving between hospitals and rehabilitation facilities as he fought to do simple tasks on his own.

94.    Plaintiff,  N.E.K., suffered severe physical, psychological, and emotional injuries as a result of the car ramming attack.

95.     Plaintiffs Stacy Rubtchinsky Kamer, Allen Samuel Kamer, Eliana Liat Kamer, Maya Adira Kamer, and Y.S.K. suffered severe economic, psychological, and emotional injuries from the attack in which their son and brother was injured.

### *Simcha Plaintiffs—Bus Attack at Al Khader Junction—December 11, 2024*

96.     On December 11, 2024, Decedent, Aharon Simcah, 12, was returning home with his family from Beitar Illit to Jerusalem when a Hamas terrorist opened fire at the Al-Khader Junction between the Gush Etzion region of the West Bank and Jerusalem. Yehoshua succumbed to his wounds at Hadassah-Ein Kerem Medical Center.

97.     Plaintiffs David Simcha, Rochel Simcha, Yecheskel Simcha, Shifra Simcha Mayteles, Ester Simcha, Mindy Simcha, M.S., H.S., B.S., M.S., B.S., C.S., Jack A. Simcha, Faye Simcha, Yehuda Baruch Rozmarin, and Hana Airus suffered severe economic, psychological, and emotional injuries from the attack in which their son, brother, and grandson was killed.

### *Plaintiff Denise Gilbert—Bus Attack—January 6, 2025*

98.     On January 6, 2025, Hamas terrorists opened fire on Bus 80 on Route 55. Denise Gilbert, a passenger on the bus, witnessed three people gunned down in front of her and was shot herself, sustaining a severe injury to her eye.

99.     Denise underwent four surgeries on her eye as a result of the injury, but has permanently lost vision in it.

100.    Plaintiff, Denise Gilbert, suffered severe physical, psychological, and emotional injuries as a result of the car ramming attack.

101.    Plaintiffs Sabrina Spector and Erick Gilbert suffered severe economic, psychological, and emotional injuries from the attack in which their mother was injured.

**FIRST CLAIM FOR RELIEF**
**ON BEHALF OF ALL THE AMERICAN PLAINTIFFS**
**FOR DAMAGES UNDER 28 U.S.C. § 1605A(c)**

102.   Plaintiffs repeat and reallege the foregoing allegations with the same force and effect as if more fully set forth herein.

103.   Iran is a foreign state that, since 1984, has continuously been designated as a state sponsor of terrorism within the meaning of 28 U.S.C. § 1605A.

104.   The Defendant provided material support and resources to Hamas and PIJ, within the meaning of 28 U.S.C. § 1605A, which caused and facilitated the October 3, 2015 terrorist stabbing, the May 12, 2021 Hamas and PIJ terrorist rocket attacks, the October 7, 2023 terrorist attacks at Supernova and invasion of Sderot, the November 15, 2023 terrorist attack, the December 14, 2023 terrorist attack, the December 11, 2024 terrorist shooting at Al-Khader Junction, the January 15, 2024 car ramming attack, and the January 6, 2025 terrorist shooting on Bus 80.

105.   Decedents Avraham Gilad Tyberg, Nehemia Lavi, and Aharon Simcha  were murdered in the terrorist attacks at issue herein, which occurred between 2015 and 2025.

106.   All were killed in extrajudicial killings at the hands of a specifically designated global terrorist organization specifically excluded by Congress from qualifying as "military forces." The killings were deliberate and not authorized by any previous judgment, nor were they carried out under the authority of a foreign nation. Congress, clarifying another terrorism victim recovery statute, specifically excluded such terrorists from qualifying as "military forces."

107.   Their estates suffered severe injury, including: conscious pain and suffering; pecuniary loss and loss of income; loss of guidance, companionship and society; loss of consortium; severe emotional distress and mental anguish; and loss of solatium.

108.    Plaintiffs N.E.K., Elchanan Yosef Kamsler, and Denise Gilbert suffered severe physical, psychological, emotional, and other injuries as a result of the terrorist attacks at issue herein, which occurred between 2015 and 2025, including disfigurement, loss of physical and mental functions, extreme pain and suffering; loss of guidance companionship and society; loss of consortium; severe emotional distress and mental anguish; loss of solatium, and loss of future income.

109.    Plaintiffs Daniel Shor, Nechama Shor C.S.S., and S.S.S., suffered psychological and emotional injuries as a direct result of the Hamas and PIJ terrorist rocket attacks that killed over 12 Israeli civilians and constituted an "extrajudicial killing" within the meaning of 28 U.S.C. § 1605 A.

110.    Plaintiffs Nechama Shor, C.S.S., and S.S.S., suffered severe psychological trauma and emotional injuries as a result of hiding from Hamas terrorists operating beneath their building and in the street immediately adjacent to it.

111.    The other American plaintiffs herein, the family members of Avraham Gilad Tyberg, Nehemia Lavi, AHARON SIMCHA, N.E.K, Elchanan Yosef Kamsler, and Denise Gilbert, and the fiancée of Captain Kfir Itzhak Franco, suffered severe psychological, emotional, and other personal injuries as a result of the respective terrorist attacks between 2015 and 2025 in which their loved ones were killed or severely physically injured, including: extreme pain and suffering; loss of guidance companionship and society; loss of consortium; severe emotional distress and mental anguish and loss of solatium.

112.    Defendant's provision of funds, weapons, munitions, training and intelligence to Hamas and the PIJ constituted the material support and resources used to murder, torture, take

hostage, and otherwise injure the decedents, Plaintiffs and their families, along with Israeli men, women, elderly, teenagers, children, toddlers, infants, and others.

113.    Plaintiffs' harms, as described above, include imminent fear of injury or death, extreme emotional distress, property damage, loss of consortium, and enduring pain and suffering, intentionally caused by Hamas and PIJ.

114.    The conduct of the Defendant was criminal, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. § 1605A(c).

### SECOND CLAIM FOR RELIEF
### ON BEHALF OF ALL PLAINTIFFS
### NEGLIGENCE
### (Under the Law of the State of Israel)

115.    Plaintiffs repeat and reallege the foregoing allegations with the same force and effect as if more fully set forth herein.

116.    Pursuant to Fed. R. Civ. P. 44.1 plaintiffs hereby give notice of their intention to rely on the law of the State of Israel.

117.    Causes of action in tort in Israeli law are codified in the Civil Wrongs Ordinance (New Version)—1968, (hereinafter "CWO").

118.    The CWO provides that any person injured or harmed by the civil wrongs (i.e. torts) enumerated in the CWO is entitled to relief from the person liable or responsible for the wrong.

119.    CWO § 35 creates a tort of Negligence.

120.    Under binding precedent of the Israeli Supreme Court, the tort of Negligence also includes intentional and/or reckless conduct.

121.    CWO § 35 provides that a person is liable for the tort of Negligence when he commits an act which a reasonable and prudent person would not have committed under the same

circumstances; or refrains from committing an act which a reasonable and prudent person would have committed under the same circumstances; or, in the performance of his occupation, does not use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation would have used or exercised under the same circumstances, and thereby causes damage to another person toward whom, under those circumstances he is obligated not to act as he did.

122.    CWO § 36 provides that the obligation stated in the last sentence of § 35 is toward all persons, to the extent that a reasonable person would have under the same circumstances foreseen that, in the ordinary course of events, they were liable to be injured by the act or omission.

123.    By providing material support to Hamas and PIJ, the defendant performed acts which a reasonable and prudent person would not have committed under the same circumstances, within the meaning of the CWO.

124.    Defendant did not, in the performance of their occupations, use the skill or exercise the degree of caution which a reasonable person qualified to act in that occupation would have used or exercised under the same circumstances, within the meaning of the CWO, in that, inter alia, Defendant provided material support to Hamas and PIJ.

125.    Defendant acted negligently in connection with the decedents and the plaintiffs, toward whom, in the circumstances described herein, Defendant had an obligation not to act as they did. Defendant was obligated not to act as they did because a reasonable person would, under the same circumstances, have foreseen that, in the ordinary course of events, persons such as the decedents and the plaintiffs were liable to be harmed by the acts of Defendant described herein.

126.    The behavior of Defendant constitutes Negligence under the CWO, and that negligent behavior was the proximate cause of the harm to decedents, to the physically injured

Plaintiffs and to their respective family members—the other Plaintiffs herein—which includes: death; conscious pain and suffering; loss of pecuniary support; loss of income; loss of consortium; emotional distress; loss of society and companionship and loss of solatium.

127.    Defendant is therefore liable for the full amount of the compensatory damages due to the estates of the decedents and to each of the Plaintiffs herein.

128.    Under Israeli case law a Plaintiff harmed by an act of Negligence caused by intentional conduct is entitled to punitive damages.

129.    The conduct of Defendant was intentional and malicious, and so warrants an award of punitive damages under Israeli law.

**THIRD CLAIM FOR RELIEF**
**ON BEHALF OF ALL PLAINTIFFS**
**AIDING AND ABETTING**
**(Under the Law of the State of Israel)**

130.    Plaintiffs repeat and reallege the foregoing allegations with the same force and effect as if more fully set forth herein.

131.    Defendant knowingly and intentionally provided material support and resources to Hamas and PIJ which enabled, facilitated, supported and assisted Hamas and PIJ to carry out the October 3, 2015 terrorist stabbing, the May 12, 2021 Hamas and PIJ terrorist rocket attacks, the October 7, 2023 terrorist attacks at Supernova and invasion of Sderot, the November 15, 2023 terrorist attack, the December 14, 2023 terrorist attack, the December 11, 2024 terrorist shooting at Al-Khader Junction, the January 15, 2024 car ramming attack, and the January 6, 2025 terrorist shooting on Bus 80.

132.    Aiding and Abetting principles are recognized in § 12 of the CWO, which provides that a person who participates in, assists, advises or solicits an act or omission, committed or about

to be committed by another person, or who orders, authorizes, or ratifies such an act or omission, is liable for such act or omission.

133.    Defendant knowingly and intentionally assisted Hamas and PIJ to carry out the October 3, 2015 terrorist stabbing, the May 12, 2021 Hamas and PIJ terrorist rocket attacks, the October 7, 2023 terrorist attacks at Supernova and invasion of Sderot, the November 15, 2023 terrorist attack, the December 14, 2023 terrorist attack, the December 11, 2024 terrorist shooting at Al-Khader Junction, the January 15, 2024 car ramming attack, and the January 6, 2025 terrorist shooting on Bus 80 and is therefore liable for the full amount of damages due to the estate of the decedents, to the physically injured and to their respective family members—the other Plaintiffs herein—under CWO § 12.

134.    The conduct of Defendant was intentional and malicious, and so warrants an award of punitive damages under Israeli law.

## JURY DEMAND

Plaintiffs demand trial by jury of all issues legally triable to a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs demand judgment as follows:

a)    Judgment against Defendant, jointly and severally, for compensatory damages in an amount to be shown, over one billion dollars;

b)    Judgment against Defendant, jointly and severally, for punitive damages in an amount to be determined at trial;

c)    An award of pre-judgment interest and post-judgment interest;

d)    Plaintiffs' costs and expenses;

e)    Plaintiffs' attorneys' fees; and

f)    Such other and further relief as is just and proper under the circumstances.

Dated: October 1, 2025
Brooklyn, New York

Respectfully submitted,

THE BERKMAN LAW OFFICE, LLC
*Attorneys for Plaintiff*

by: _____

Robert J. Tolchin

829 East 15th Street, Box 7
Brooklyn, New York 11230
(718) 855-3627


NITSANA DARSHAN-LEITNER & CO.
Nitsana Darshan-Leitner
*Israeli counsel for the plaintiffs*
10 Hata'as Street
Ramat Gan, 52512 Israel
Israeli #: 011-972-3-7514175
U.S. #: 212-591-0073